# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ALEXUS WILLIAMS, As Surviving Next of Kin of DEWAYNE WILLIAMS, | ) ) ) | **Lead Case No.:** 1:23-cv-01542-ELR **Consolidated Case Nos.:** |
| Plaintiff, | ) ) | 1:23-cv-01548-MHC 1:23-cv-01553-MHC |
| v. | ) ) | 1:23-cv-01557-TWT 1:23-cv-01562-LMM |
| JAY E. JOHNSON; MARK LEGARDA; | ) | 1:23-cv-01563-MHC |
| MARTIN RUSSO; MATTHEW EAST; | ) | 1:23-cv-01566-JPB |
| DOUG BONDAR; MARK BARNES; | ) | 1:23-cv-01568-SEG |
| NANCY LIVINGSTON; KENDALL | ) | 1:23-cv-01571-AT |
| PATIENT RECOVERY U.S., LLC; KPR | ) | 1:23-cv-01564-ELR |
| U.S., LLC; CARDINAL HEALTH INC. | ) | 1:23-cv-01555-VMC |
| and JOHN DOE NOS. 1-10, | ) | 1:23-cv-01565-MLB |
| | ) | 1:23-cv-01569-TWT |
| Defendants. | ) | 1:23-cv-01572-SCJ |
| | ) | 1:23-cv-01573-LMM |
| | ) | 1:23-cv-01574-MHC |
| | ) | 1:23-cv-04927-ELR (this case) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE[1]

Defendants have moved to transfer venue in this case under 28 U.S.C. § 1404, claiming that the Southern District of Georgia is a more appropriate forum for the case to proceed, and that, among other things, KPR and other defendants "have no connection to the Northern District." This is a curious argument, given that KPR had long been satisfied that Gwinnett County was its choice to locate its

---

[1] Although this case has been consolidated with the other cases listed above, this response is filed in connection with Case No. 1:23-cv-04927-ELR only.

registered agent, and in the six-month period before the lawsuit was filed has **_twice_** chosen a Northern District venue for its registered agent: Gwinnett County and Forsyth County.

Ultimately, for the reasons set forth below, the Court should deny the Motion to Transfer in the event it reaches the issue. But, as discussed below, given the fact-intensive analysis required in considering the motion and in the interests of judicial efficiency, the Court should decline to rule on the transfer motion until after it rules on Plaintiff's Motion to Remand. It should also permit limited discovery to enable the parties to determine the extent of Defendants' activities in the Northern District, which are more extensive than they have admitted. If the case is remanded, as Plaintiff contends is required, then the Motion to Transfer will be moot, and will not require the Court to expend the time and resources involved in weighing the merits of this motion.

## BACKGROUND

This is a civil tort action seeking recovery for the wrongful death of Plaintiff's father, Dewayne Williams, as a proximate result of chronic exposure to ethylene oxide ("EtO") that was used in, stored in, and emitted from the facility owned, operated, and controlled by the corporate Defendants. As a proximate result of Defendants' unsafe EtO emissions, the decedent was diagnosed with

Acute Promylocytic Leukemia and died on October 10, 2021. [Doc. 1-1, ¶¶ 24, 26].

On October 10, 2023, Plaintiff filed this lawsuit in Gwinnett County State Court. The lawsuit was not, as Defendants claim, a renewal suit. This is a wrongful death suit, which, although certainly arising from the same circumstances, is legally and factually distinct from the claims of the decedent's estate involved in the decedent's prior lawsuit. No wrongful death suit has been previously filed in any forum.

In addition to the corporate Defendants, Plaintiff identified and named seven individuals as defendants, six of whom are Georgia residents. Nevertheless, despite the prohibition against removal under the forum-defendant rule found in 28 U.S.C. § 1441(b)(2), Defendants removed the case to this Court, alleging that the individual Georgia residents were fraudulently joined.

To the extent the Defendants argue that Gwinnett is an improper venue under Georgia law, this issue is irrelevant to the question before the Court because, in their own efforts to forum shop, KPR has simply changed its registered agent to a neighboring county, one that is **also** located in the Northern District, and an action in Forsyth County would also be subject to venue in this District under 28 U.S.C. § 1441(a). Based on the factors set forth under 28 U.S.C. § 1404 and

applicable case law, Defendants have not met their heavy burden of showing that the case should be transferred.

## ARGUMENT AND CITATION OF AUTHORITIES

Under 28 U.S.C. § 1404, the burden is on Defendants, as the moving parties, to establish that the case should be transferred. *Pergo, Inc. v. Shaw Indus., Inc.*, No. 1:03-CV-1709-BBM, 2003 WL 24129779, at *1 (N.D. Ga. Sept. 16, 2003) (citing *In re Ricoh Corp .,* 870 F.2d 570, 573 (11th Cir. 1989)). And in weighing the factors, "[u]nless the balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed." *Id.* (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)); *Merswin v. Williams Cos., Inc.*, No. 1:08-CV-2177-TWT, 2009 WL 249340, at *6 ("[i]n the Eleventh Circuit, there exists a 'strong presumption against disturbing plaintiff's initial forum choice.'") (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004)). With this in mind, Plaintiff shows as follows.

### A. The Court should not consider this Motion until it rules on Plaintiff's Motion to Remand

As an initial matter, before the Court weighs the numerous factors involved in analyzing the Motion to Transfer, it should first resolve the threshold question of whether the case is properly in federal court. As noted in prior briefing in the consolidated cases, efficiency weighs strongly in favor of this procedure: if the

Motion to Remand is granted, which it should be because the case was improperly removed, then the Motion to Transfer is moot. If, on the other hand, the Motion to Transfer is considered first, then regardless of the outcome of that motion, a court—either this Court or a judge in the Southern District—will *still* need to address the Motion to Remand.

This is especially true since the majority of the companion cases to this action lack complete diversity, which deprives this Court of subject-matter jurisdiction over the lawsuits. The Eleventh Circuit requires a court to "inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Id.*; *see also Pickard v. Kia Motors Corp*., No. 1:12-CV-4419-TWT, 2013 WL 675280, at *1 (N.D. Ga. Feb. 22, 2013) ("The determination of the court's subject matter jurisdiction is, and must be, the first inquiry in the removal context."). And because the core issue in the Motion to Remand—whether the resident defendants were properly joined in the action—is the same, the Motions to Remand necessarily involve the same considerations in all 17 consolidated cases.

While Plaintiff does not doubt that Judge Hall (or any other Southern District Judge) is well-qualified to consider the Motion to Remand, so is this Court.

And given the significant factual issues involved in weighing the propriety of transfer, the far more efficient approach is for the Court to first consider whether the case should be remanded, because if that motion is granted, as Plaintiff contends it should be, the Court need not consider the Motions to Transfer at all.

### B. Venue was proper in either Gwinnett County or Forsyth County, and if the case is not remanded, will be proper in the Northern District

Defendants argue that venue was not proper in Gwinnett County, because KPR U.S., LLC recently moved its registered agent to Forsyth County. Therefore, it ironically admits to forum shopping while accusing Plaintiff of doing the same. The state-law venue question, while briefly addressed below, is also completely irrelevant to the Court's consideration of this motion because (1) 28 U.S.C. § 1441(a) fixes venue in the Northern District upon removal based on where the case was pending in state court, and (2) even if the case had been filed in Forsyth County, venue would *still* lie in the Northern District.[2] "For our purposes it sufficient to recognize that, as a matter of law, § 1441(a) establishes federal venue in the district where the state action was pending, and it is immaterial that venue was improper under state law when the action was originally filed." *Hollis v. Florida State University*, 259 F.3d 1295, 1300 (11th Cir. 2001); *see also Cawley v.*

---

[2] Actions filed in Forsyth County are removable to the Northern District of Georgia, Gainesville Division.

*Wal-Mart Stores E. LP*, No. 1:18-CV-5535-MHC, 2019 WL 10068997, at *2 (N.D. Ga. June 14, 2019) (same, quoting *Hollis*).

Defendants are correct that 28 U.S.C. § 1404 governs transfer of venue, and the factors interpreting it will be discussed below. But venue is unquestionably correct in the Northern District, and the fact that the decedent filed suit previously in the Southern District of Georgia—a different lawsuit by a different person asserting a different claim—has no bearing whatsoever on whether venue is proper in this case.

Suit was filed in Gwinnett County because the registered agent for Kendall Patient Recovery U.S., LLC (KPR) was located there. KPR's Certificate of Authority to transact business in Georgia was revoked by the Secretary of State on October 28, 2022 (presumably due to non-payment of its annual registration fee), but under O.C.G.A. § 14-11-709(e), "[r]evocation of a foreign limited liability company's certificate of authority does not terminate the authority of the registered agent of the foreign limited liability company." Therefore, venue was proper in Gwinnett County under O.C.G.A. §§ 14-2-510(b)(1) (establishing venue where corporation maintains registered office) and 14-11-1108 (applying corporation venue rules to limited liability companies).[3]

---

[3] Presumably, KPR could have directed its registered agent to stop acting in that capacity, but no evidence suggest this took place.

Confusingly, on April 17, 2023, shortly after the other consolidated cases were filed, KPR obtained a **new** Certificate of Authority with the Secretary of State under a different name: KPR U.S., LLC. Kendall Patient Recovery U.S., LLC (as previously registered) and KPR U.S., LLC (as currently registered) are the same entity, named KPR, U.S., LLC in its state of organization (Delaware) as shown by its filings with the Secretary of State.[4] When it did so, KPR once again chose Gwinnett County for the location of its registered agent, seemingly confirming its intent to be subject to litigation in that forum. Then, in August 2023, it moved its registered agent—mid-year, rather than during the Secretary of State's normal renewal cycle—to Forsyth County, in an obvious attempt at forum shopping. See **Exhibit 5**. But the common thread was the company's commitment to maintaining a registered agent in a venue located within the Northern District of Georgia. Based on Kendall Patient Recovery, LLC's status as an administratively revoked entity, and under O.C.G.A. § 14-11-709(e), it would still appear that under that registration, Gwinnett County remains a proper venue. But if Plaintiff is incorrect, and venue would be subject to transfer to Forsyth County had it remained in state court, this is a matter of state law and is irrelevant for purposes of this motion.

### C. Due to the discrepancy in facts claimed by Defendants, the Court should permit limited venue-specific discovery before ruling on the Motion to Transfer

---

[4] The Articles of Organization for "Kendall Patient Recovery U.S., LLC" and "KPR U.S., LLC" are attached hereto as **Exhibits 1 and 2,** respectively.

In support of their Motion to Transfer, Defendants make representations that are not in the record, and which are largely or entirely within the knowledge of Defendants alone. And prior litigation in the consolidated cases has shown that Defendants have not been forthcoming about their activities in the Northern District.

For instance, Defendants claimed in the earlier Motions to Transfer that that "[n]one of the parties to this litigation are based in the Northern District of Georgia, have an office here, or have any employees here." *See, e.g., Dunn v. Johnson et al*, Case No. 1:23-01566, Doc. 6-1, p. 11. But, as the plaintiffs pointed out, this was false. KPR and Cardinal Health operate a "Global Replenishment Center" located in Atlanta that distributes EtO-treated products and emits 4,000 lbs of EtO annually. *See* **Exhibit 3** (EPD Notice of Violation to KPR/Cardinal Health) and **Exhibit 4** (KPR/Cardinal Health response to Notice of Violation). The Georgia Environmental Protection Division corresponded with personnel at the Atlanta KPR facility concerning violation of state regulations related to EtO:



**GEORGIA**
DEPARTMENT OF NATURAL RESOURCES
ENVIRONMENTAL PROTECTION DIVISION

**Richard E. Dunn, Director**

**Air Protection Branch**
4244 International Parkway
Suite 120
Atlanta, Georgia 30354
404-363-7000

September 4, 2020

**Via Electronic Transmission to Jeremy.Currithers@cardinalhealth.com**

Mr. Jeremy Currithers
Director of Operations, Global Replenishment Center
Cardinal Health
110 Kendall Park Lane South
Atlanta, GA 30336

RE:  **Notice of Violation**
Operating without an Air Quality Permit
KPR LLC, US Warehouse, Atlanta, Georgia

Dear Mr. Currithers:

This letter serves as a Notice of Violation of the Georgia Rules for Air Quality Control (Georgia Rules) to Cardinal Health for operating the KPR LLC, US warehouse (Warehouse), located at 110 Kendall Park Lane South, Atlanta, Georgia, without an air quality permit.

Exhibit 3.

Tellingly, after the other consolidated plaintiffs uncovered this information, Defendants omitted this assertion from the present Motion to Transfer. But they continue to make claims that are entirely within Defendant's knowledge, such as the claim that "the witnesses and evidence in this case are overwhelmingly located in the Southern District," that "[a]ll material witnesses reside outside the Northern District," and that "[t]he *entire* locus of operative facts falls exclusively within the confines of Augusta and the Southern District." [Doc. 5-1, pp. 10-11][5] (emphasis in original). And there is certainly information suggesting that KPR's operations in

---

[5] Citations are to the Court's pagination rather than the document's internal pagination.

Georgia are tightly integrated between the Augusta and Atlanta facilities. The September 4, 2020 EPD letter notes that the Atlanta KPR facility stores products from "several medical sterilizing facilities in the Southeastern United States," presumably including the Augusta KPR facility. It is unclear, based on this information, where the lead management for KPR's operations are in Georgia, but based on this correspondence, it is quite possibly located in Atlanta, given that multiple facilities feed into this distribution center.

Plaintiff submits that, based on the fact-specific inquiry required for consideration of Defendants' Motion to Transfer, limited venue-specific discovery is appropriate. This is especially true given that Defendants have previously submitted provably false "facts" in their efforts to transfer venue, and therefore the Court, and Plaintiff, should be given fair access to the truth of Defendants' activities. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *see also Lewis v. Pension Ben. Guar. Corp.*, No. 1:14-CV-03838-SCJ, 2015 WL 5577377, at *1 (N.D. Ga. Aug. 11, 2015) ("On April 10, 2015, the Court granted Plaintiffs' request to engage in limited discovery related to the proper venue for this action."); *United States ex rel. Farley v. Providence Learning Ctr. & Dev. Corp.*, No. 1:03-CV-62 (WLS), 2005 WL

8165417, at *2 (M.D. Ga. Mar. 31, 2005) ("As a legitimate question of fact exists as to whether venue is proper in this district, Defendants' motions to dismiss for improper venue ... are DENIED without prejudice and the parties are directed to conduct limited discovery on the issue.").

Plaintiff intends to file a separate motion to permit limited discovery on the issue of venue and requests the same here. Discovery is sought on the following issues:

- Identification of all facilities operated by Cardinal Health, KPR, and any related company in Georgia;

- Identification of all property owned by Cardinal Health, KPR, and any related company in Georgia;

- Identification of any such facilities that handle ethylene oxide or products treated with ethylene oxide;

- Identification of employees of Cardinal Health, KPR, and any related company in Georgia;

- Identification of management personnel of Cardinal Health, KPR, and any related company in Georgia connected with the use or handling of ethylene oxide or products treated with ethylene oxide;

- Location of corporate records regarding any matters above;

- Identification of all locations that Cardinal Health, KPR, and any related company sterilize medical devices in Georgia;

- Identification of all locations Cardinal Health, KPR, and any related company store ethylene oxide in Georgia;

- Identification of all sterilized medical equipment and ethylene oxide used by Cardinal Health, KPR, and any related company in Georgia, that was transferred from Augusta to its facilities in the Northern District; and

- Identification and production of documents concerning communications, permits, settlements, violations, or any other matters with the Georgia Environmental Protection Division or other municipal, county, state or federal regulatory agency regarding use, release, or disposal of ethylene oxide in the state.

### D. The factors weigh against transfer to the Southern District

The factors used to determine whether a transfer should be granted are flexible, and courts have expressed them differently. Section 1404 itself directs a court to consider three factors: (1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interests of justice. In analyzing these factors, however, courts have further refined the criteria used to weigh the propriety of transfer. *See, e.g., Occidental Fire & Cas. Co. of N.C. v. Nat'l Interstate Ins. Co.*, No. 1:10-CV-3650-HLM, 2011 U.S. Dist. LEXIS 14811, at *6 (N.D. Ga. Feb. 14, 2011) (applying seven factors: plaintiff's choice of initial forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory witnesses, location of relative documents, financial ability to bear the costs of change, and the public interest). In the interest of consistency, Plaintiff will address the nine factors argued by Defendants, as noted in a footnote to *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1133 (11th Cir.

2005).[6] Ultimately, the factors in no way "overwhelmingly" weigh in favor of transfer to the Southern District as represented by Defendants.

1. *The weight accorded a plaintiff's choice of forum*

In the context of seeking transfer between two proper venues, Defendants "ordinarily bear[] a **heavy burden** in opposing the plaintiff's chosen forum," as the "traditional" deference given to plaintiff's choice of forum should rarely be disturbed. *Sinochem Int'l Co. Ltd. v. Malaysia Intern. Shipping Corp.,* 549 U.S. 422, 423 (2007) (emphasis added); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) ("a plaintiff's choice of forum should rarely be disturbed"); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009) (same); *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir. 1989) ("Federal courts traditionally have accorded a plaintiff's choice of forum considerable deference…"); *Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1284 (N.D. Ga. 2015) ("In the absence of a clear difference in convenience, the plaintiff's choice of forum is determinative.").

Plaintiff filed this case in Gwinnett County, the forum KPR chose for its registered agent repeatedly. But there are other reasons why a venue in Metro Atlanta, i.e., the Northern District (whether Gwinnett or Forsyth Counties) makes

---

[6] These factors are addressed in the order of Defendants' argument, rather than the order stated in *Manuel.*

sense. For example, EtO cases are heavily intertwined with regulatory agencies, including state and federal agencies located in Atlanta. KPR's Augusta operations are operated under the oversight of the Georgia Environmental Protection Division, which is located in the Northern District, and which issued the facility's Air Quality Permit. [Doc. 1-1, ¶ 91]. KPR and Cardinal Health corresponded with the Georgia EPD in Atlanta regarding its Atlanta facility, as shown in the attached Exhibits 3 and 4, and Georgia EPD was involved in investigations into leaks at the KPR Augusta location on numerous occasions. [Doc. 1-1, ¶¶ 79-90].

The United States Environmental Protection Agency Region 4 headquarters, covering its activities in Georgia, is also located in Atlanta, and is expected to have information relevant to the litigation of this case, including data reported to it by KPR that is critical to the allegations in the Complaint. [Doc. 1-1, ¶¶ 72-78]. Moreover, expert testimony is likely to involve witnesses from around the country, but Atlanta is better situated from a transportation infrastructure standpoint to be a convenient location for those experts' consultation and testimony. Finally, despite their earlier claims to the contrary, KPR and Cardinal Health do, in fact, have a facility in the Northern District involved in the companies' EtO activities, and certainly have employees in the District.

While a plaintiff's choice may be diminished if other factors are compelling, here, there are equally compelling reasons that the Northern District is appropriate.

Therefore, Defendants have failed to show that the factors weigh strongly against Plaintiff's choice, as their burden requires. *Pergo, Inc. v. Shaw Indus., Inc.*, No. 1:03-CV-1709-BBM, 2003 WL 24129779, at *1 (N.D. Ga. Sept. 16, 2003) (citing *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989)).

### 2.  *The locus of operative facts*

Defendants focus on the fact that the EtO emissions in this case all involved a facility in Augusta. While that is undisputed, it is not the end of the inquiry. As discussed above, KPR's Augusta facility is heavily regulated by agencies located in Atlanta, and significant relevant information and testimony is expected to originate from Atlanta. Moreover, there is no clear indication that most or all high-level corporate decision-making originated at the facility, or in coordination with other corporate offices off-site. It is unclear at this stage where all of the decision-makers may have been located (and the requested limited discovery will inquire into these issues), but it appears likely that, given the heavy regulatory presence in Atlanta, additional high-level officers are located in the Northern District where Cardinal Health appears to carry on substantial activities and where KPR chose to designate its registered agent on three separate occasions.

### 3.  *The Procedural History and Operative Facts*

Once again, Defendants incorrectly assert that this is a renewal case, and further wrongly state that the case was previously dismissed. [Doc. 5-1, p. 11]. If

this were a claim brought by the decedent's estate, this would be correct. But this wrongful death lawsuit is a distinct cause of action and is not a renewal. Even if it were a renewal, however, it is well settled under Georgia law that a renewal action filed pursuant to O.C.G.A. § 9-2-61 "is an action de novo…and is 'not a continuance of the original action.'" *SunTrust Bank v. Lilliston*, 302 Ga. 840, 843 (2018) (quoting *Archie v. Scott*, 190 Ga. App. 145, 146, (1989)); *see also Cleveland v. Skandalakis*, 268 Ga. 133, 134 (1997) (rejecting argument that renewal action is merely a continuation of the original action).

Nevertheless, Defendants rely heavily on the Southern District's consideration of the previously filed lawsuit against KPR *in other cases*. They overstate their case. Those lawsuits never proceeded past the motion to dismiss stage, and the Court (as it relates to the claims here) considered only the narrow issue of Article III standing under federal law. No discovery was involved. On the contrary, the current case involves far more substantial and distinct allegations against KPR as well as other parties. There is no reason why any judge in the Northern District is less equipped to analyze the issues involved in this lawsuit than Judge Hall or another judge in the Southern District. Moreover, the authority cited by Defendants is not remotely similar to the case here. *Osgood v. Discount Auto Parts*, for example involved the decision whether to add a party that would have destroyed diversity and remanded the case to state court, stripping the judge

in the current case of jurisdiction. *Osgood v. Disc. Auto Parts*, 955 F. Supp.2d 1355 (S.D. Fla. 2013). Here, in contrast, Defendants are attempting to strip **this** Court of authority over the case in favor of a judge who presided over an earlier case and who only conducted a limited examination of the prior allegations. This factor should carry very little, if any, weight in this Court's consideration.

> 4. *The convenience of the witnesses and parties and the location of relevant documents and the relative ease of access to sources of proof* [7]

As discussed earlier, the contention that the parties to this case have no connection with the Northern District is false—at a minimum, Cardinal Health and KPR appear to have employees in this District, and KPR chose Gwinnett County, and then Forsyth County, for its registered agent twice in the six months preceding the filing of this lawsuit. The Northern District would certainly not be inconvenient for witnesses located in the District. It is unlikely that substantial portions of relevant documents are physically located at the KPR Augusta facility, and much of the discoverable information is likely located on KPR and Cardinal Health computers and offices located out of state. But as also noted, much of the relevant information is also contained in records of regulatory agencies, including the Georgia EPD and the EPA, located in Atlanta.

---

[7] This section addresses Factors 4-7 as set forth by Defendants, as these factors are closely related. However, Defendants do not present any reason why the "relative means of the parties" factor is relevant.

Moreover, any issue concerning "convenience of witnesses" is illusory. To the extent the parties need to be deposed, those depositions can be conducted close to their homes—Plaintiff has no objection to this—or even remotely. The physical location of the Court has little bearing on their convenience. Indeed, non-party witnesses, many of whom are expected to be out-of-state, are likely to consider Atlanta and the Northern District to be a more convenient location.

5. *The availability of process to compel the attendance of unwilling witnesses*

Defendants' reliance on this factor is again overstated. They note that certain witnesses likely reside more than 100 miles from this District. That may be true, but Federal Rule of Civil Procedure 45 permits a witness to be subpoenaed from any District Court, including the Southern District, and therefore the "100-mile rule" applies equally to the witnesses located in that District. Given the nationwide subpoena power provided by the Federal Rules, this factor is far less compelling. This is especially true given that there may be "unwilling witnesses" located in the Northern District to the same extent as in the Southern District. Moreover, there is no indication that there are, in fact, "unwilling witnesses" that would implicate this factor. The relative convenience and access of the Northern District and Atlanta, on the other hand, is more important for out-of-state witnesses, including experts, than the minimal relevance of this factor.

6. *Trial efficiency and the interests of justice, based on the totality of the circumstances.*

Finally, for all of the reasons stated above, there is no inefficiency or difficulty in having this case proceed in the Northern District. Plaintiff is satisfied with this forum, if the Motion to Remand is denied, and there should be no substantial financial or practical difficulty in the case proceeding here. In fact, for the convenience of non-party witnesses, many are likely to either be in this District or out of state. In either event, there is no practical benefit to the case being transferred to the Southern District.

## CONCLUSION

Before weighing the factors set forth in 28 U.S.C. §1404 and case law relevant to a motion to transfer, the Court should issue a ruling on Plaintiff's Motion to Remand because the case was not properly removable to this Court. Because Plaintiff believes that the Motion to Remand should be granted, the issues raised in the Motion to Transfer need not be considered. But if the Court ultimately does reach these motion, Plaintiff submits that Defendants have failed to meet their burden of showing the propriety of transfer. Plaintiff also requests limited discovery on the issue of venue to investigate the facts that may support or weigh against transfer.

Respectfully submitted this 13th day of November, 2023.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com
WILLIAM L. BALLARD
Georgia Bar No. 035625
bill@pennlawgroup.com
ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com
JOHN D. HADDEN
Georgia Bar No. 141317
john@pennlawgroup.com

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655

## STATEMENT OF COMPLIANCE

In accordance with the Local Rules of this Court, this filing was prepared using Times New Roman 14-point type.

*/s/ Darren W. Penn*
Darren W. Penn

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed this filing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

S. Derek Bauer
William D. Ezzell
Georgia L. Bennett
Baker & Hostetler, LLP
1170 Peachtree Street
Suite 2400
Atlanta, Georgia 30309
dbauer@bakerlaw.com
wezzell@bakerlaw.com
gbennett@bakerlaw.com
*Attorneys for Kendall Patient Recovery US, LLC. Cardinal Health, Inc.,*
*Mark Legarda, Martin Russo, Mark Barnes, and Nancy Livingston*

Matthew D. Thurlow
Admitted Pro Hac Vice
Baker & Hostetler LLP
1050 Connecticut Avenue NW, Suite 1100
Washington, DC 20036
mthurlow@bakerlaw.com
*Attorneys for Kendall Patient Recovery US, LLC. Cardinal Health, Inc.,*
*Mark Legarda, Martin Russo, Mark Barnes,  and Nancy Livingston*

Mike Taylor
Liese Lynch
Hull Barrett
801 Broad Street, 7th Floor
Augusta, Georgia 30901
mtaylor@hullbarrett.com
llynch@hullbarrett.com
*Attorneys for Jay Johnson*

R. Brent Hatcher, Jr.
T. Burns Marlow
Smith Gilliam Williams & Miles
340 Jesse Jewell Parkway, S.E., Ste. 300
Gainesville, Georgia 30501
bhatcher@sgwmfirm.com
bmarlow@sgwmfirm.com
*Attorneys for Matthew East and Doug Bondar*

Respectfully submitted this <u>13th </u>day of November, 2023.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
darren@pennlawgroup.com
WILLIAM L. BALLARD
Georgia Bar No. 035625
bill@pennlawgroup.com
JOHN D. HADDEN
Georgia Bar No. 141317
john@pennlawgroup.com
ALEXANDRA "SACHI" COLE
Georgia Bar No. 696892
sachi@pennlawgroup.com
KEVIN M. KETNER
Georgia Bar No. 418233
kevin@pennlawgroup.com

4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655