IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EUNICE LAMBERT, on behalf of Felicia Lambert, Deceased, and as Administrator of the Estate of Felicia Lambert,<br><br>    Plaintiff,<br><br>v.<br><br>JAY E. JOHNSON, et al.,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*   1:23-CV-01542-ELR<br>*<br>*<br>*<br>*<br>* |

_____

**O R D E R**

_____

This matter is before the Court on Plaintiff Eunice Lambert's Motion to Remand [Doc. 75] and Defendants Mark Barnes, Cardinal Health, Inc., KPR U.S., LLC, Kendall Patient Recovery U.S., LLC, Mark Legarda, Nancy Livingston, and Martin Russo's Motion to Transfer [Doc. 74]. The Court sets forth its reasoning and conclusions below.

**I.   Background**

This case began in July 2021, when 23 plaintiffs jointly filed a personal injury action against KPR in the Southern District of Georgia alleging injuries from the chemical ethylene oxide ("EtO") emitted by KPR's industrial medical plant in

Augusta, Georgia. [Doc. 1-7]. Judge Randal Hall dismissed the claims of three plaintiffs with prejudice and the claims of the other 20 plaintiffs without prejudice for lack of standing. [Docs. 1-3].

After several additional re-filings and dismissals in the Southern District of Georgia, 16 of the plaintiffs filed separate, but nearly identical, lawsuits against Defendants in Gwinnett County State Court in March 2023. [See, e.g., Doc. 1-1].[1] In addition to asserting claims against KPR (as the plaintiffs had unsuccessfully done in the Southern District of Georgia), these suits also named as defendants Cardinal Health, Martin Russo, and six Georgia citizens who worked as "high-level supervisors, managers, and/or operators employed by KPR and Cardinal Health at the Augusta Facility": Jay Johnson, Mark Legarda, Matthew East, Doug Bondar, Mark Barnes, and Nancy Livingston (collectively, the "Georgia Defendants"). [Id. ¶ 18]. The lawsuits allege identical claims for negligence (Count I), public nuisance (Counts II and III), private nuisance (Count IV), ultrahazardous activity/strict liability (Count V), respondeat superior (Count VII), racketeering (Count VIII), punitive damages (Count IX), and attorney's fees (Count X).[2] [Id. ¶¶ 105–202].

---

[1] When referencing these lawsuits, this order cites only to the Complaint associated with this case number (No. 1:23-CV-01542-ELR). However, because each complaint asserts identical claims, any cited reference to the Complaint is consistent with the complaints filed by the other 15 plaintiffs.

[2] The Complaint misnumbers the claims, skipping Count VI. For simplicity, this order refers to the claims as they are numbered in the Complaint.

Defendants removed each of those 16 cases to this Court, arguing that Plaintiffs fraudulently joined Georgia Defendants solely to avoid removal to federal court. [Doc. 1]. By consent of the Parties, the Court consolidated the cases for pre-trial purposes into the instant action. [Doc. 34]. Days after removal, Defendants filed a motion to transfer the cases to the Southern District of Georgia, and Plaintiffs filed a motion to remand. [Docs. 7; 18]. After seven plaintiffs voluntarily dismissed their claims, the Court referred the nine remaining plaintiffs to mediation, which was unsuccessful.[3] [Docs. 67; 68; 72]. The Parties then jointly moved to reopen the case, Defendants refiled their motion to transfer, and Plaintiffs refiled their motion to remand. [Docs. 73–75]. The motions have been fully briefed and are now ripe for review.

## II.   Legal Standard

Federal district courts have subject matter jurisdiction over two types of cases: "actions arising under the Constitution, laws, or treaties of the United States" (i.e., federal-question jurisdiction), 28 U.S.C. § 1331, and actions between citizens of different states where the amount in controversy exceeds $75,000 (i.e., diversity jurisdiction), 28 U.S.C. § 1332(a). Cases based on diversity jurisdiction require

---

[3] The following nine cases remain active: Case Nos. 1:23-CV-01555-VMC; 1:23-CV-01557-TWT; 1:23-CV-01564-ELR; 1:23-CV-01566-JPB; 1:23-CV-01571-AT; 1:23-CV-01565-MLB; 1:23-CV-01572-SCJ; 1:23-CV-01574-MHC; and 1:23-CV-04927-ELR. This order refers to the remaining plaintiffs in these actions collectively as "Plaintiffs." Because these cases are consolidated and Plaintiffs' motion expressly applies to each of these cases, [see Doc. 75-1 at 1 n.1], the rulings of this order apply to each case.

"complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). When complete diversity exists and no defendant is a citizen of the forum state, defendants have the right to remove to federal court an action originally filed in state court. See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005) (citing 28 U.S.C. § 1441(a)). But a defendant's right to remove does not obviate a plaintiff's right to choose the forum. The Eleventh Circuit has repeatedly emphasized that plaintiffs, as "the master of the complaint," are generally permitted to structure their case to prevent removal. Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013) (citation omitted). Plaintiffs are not permitted, however, to avoid federal jurisdiction through a fraudulent method. Id.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity."[4] Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). It applies when "a plaintiff names a non-diverse defendant solely in order to defeat diversity jurisdiction[.]" Henderson v. Wash. Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). In such cases, "the district

---

[4] "As many courts have noted, the term 'fraudulent joinder' is a bit of a misnomer—the doctrine requires neither fraud nor joinder." Manley v. Ford Motor Co., 17 F. Supp. 3d 1375, 1380 n.2 (N.D. Ga. 2014) (quoting Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 763 n.9 (7th Cir. 2009)). Nevertheless, this order uses "fraudulent joinder" as a term of art because it is the preferred term of this Circuit.

court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Id. Establishing fraudulent joinder is a "heavy burden"—the removing party must prove "by clear and convincing evidence 'that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011) (alterations adopted) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)).

In this Circuit, district courts determine whether fraudulent joinder exists "based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). And courts must consider "the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law" in favor of remand. Stillwell, 663 F.3d at 1333. In that way, the standard of review is "similar to that used for ruling on a motion for summary judgment," but the removal standard is far less stringent. Crowe, 113 F.3d at 1536; see also Stillwell, 663 F.3d at 1333 (describing the fraudulent joinder standard as "a lax one"). Remand is required "if there is *any possibility* that the state law might impose liability on a resident defendant under the

circumstances alleged in the complaint[.]" Florence v. Crescent Res., LLC, 484 F.3d 1293, 1299 (11th Cir. 2007) (emphasis added).

Courts rely on the pleading standard of the forum state to determine whether such a possibility exists. Stillwell, 663 F.3d at 1333–34. The pleading standard of the forum state in this case, Georgia, is far less stringent than the federal pleading standard of Twombly and Iqbal, which requires the plaintiff to allege facts sufficient to establish a plausible claim for relief. Id. at 1334. By contrast, pleadings, even those supported by bareboned and conclusory allegations, are sufficient under Georgia's notice pleading standard as long as they "give[] fair notice and state[] the elements of the claim plainly and succinctly." Id. (quoting Carley v. Lewis, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996)); see also Walker v. Walker, 668 S.E.2d 330, 333 (Ga. Ct. App. 2008) ("[A] plaintiff's complaint need only state a claim, and does not have to allege facts sufficient to set forth a cause of action." (cleaned up)).

### III.  Discussion

Defendants assert that Plaintiffs fraudulently joined Georgia Defendants to the state court lawsuits solely to prevent removal. [Doc. 1 ¶¶ 26–34]. In support of this theory, Defendants identify several deficiencies in the Complaint to argue that Plaintiffs cannot establish even the possibility of a claim for relief against Georgia Defendants. The Court will first address Defendants' argument that the claims are

time-barred and then examine the factual basis of the allegations to determine whether Plaintiffs have asserted possible claims under Georgia law.

### A. Timeliness of Plaintiffs' Claims

Defendants contend that Plaintiffs' personal injury and property damage claims are time-barred because no alleged misconduct occurred after Plaintiffs learned about the health risks associated with KPR's facility in July 2019, which places this suit, filed in March 2023, outside the two-year statute of limitations period. [Docs. 1 ¶¶ 31–32; 77 at 22–25]. In response, Plaintiffs argue that Defendants concealed the causal connection between Plaintiffs' injuries and Georgia Defendants' conduct, tolling the statute of limitations and rendering their claims timely. [Doc. 75-1 at 18–22].

In Georgia, the statute of limitations for personal injury claims is two years, O.C.G.A. § 9-3-33, and four years for property damage claims, O.C.G.A. § 9-3-30(a). However, under Georgia's discovery rule, claims involving continuing torts do not accrue until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the nature of the injury and the causal connection between the injury and the defendant's conduct. King v. Seitzingers, Inc., 287 S.E.2d 252, 254 (Ga. Ct. App. 1981); see also Corp. of Mercer Univ. v. Nat'l Gypsum Co., 368 S.E.2d 732, 733 (Ga. 1988) (limiting discovery rule to continuing torts, "cases of bodily injury which develop only over an extended period of time"). Thus, at this

juncture, the Court must determine whether there is any possibility that Plaintiffs' reasonable diligence would not have led to the discovery of their alleged injuries and their cause. Because such a possibility exists, the Court finds Defendants' timeliness argument unpersuasive.

Defendants rest the bulk of their argument that Plaintiffs' claims are time-barred on Judge Hall's reasoning in the order dismissing the initial federal action. [Doc. 77 at 23–24] (citing Brownman v. Kendall Patient Recovery U.S., LLC, No. CV 121-112, 2022 WL 4451339, at *6 (S.D. Ga. Sept. 23, 2022)). In that order, Judge Hall concluded that because Plaintiffs did not allege in their federal complaint that they could not have reasonably discovered the link between their injuries and Defendants' conduct, the discovery rule did not apply, the statute of limitations did not toll, and the suit was untimely. Brownman, 2022 WL 4451339, at *6. Defendants argue that Judge Hall's ruling applies with even more strength in this case because these claims are two years older than the time-barred claims in the federal action. [Doc. 77 at 23–24]. But two important distinctions in this case mandate a different outcome.

First, unlike the federal complaint, the Complaint here adequately alleges facts sufficient to trigger the discovery rule and toll the statute of limitations. [Compare Doc. 1-1, with Doc. 1-7]. Georgia Defendants were not part of the first federal action. And, as Plaintiffs correctly argue, the statute of limitations did not

begin to run until Plaintiffs knew or should have known about the negligent conduct of *those Defendants*. [Doc. 79 at 9–10]. Defendants contend that Plaintiffs "have provided no reason as to why [Georgia Defendants] could not have been identified through reasonable diligence at the time of the federal court filing." [Doc. 77 at 25]. But the Complaint plainly alleges such a reason: "Defendants negligently misrepresented, altered, and concealed the true nature and extent of EtO emissions from the Augusta Facility from government entities and the public in general, subjecting Plaintiff and those who live and work in the nearby community to an elevated cancer risk." [Doc. 1-1 ¶ 23]. The Complaint also alleges that

> Defendants retroactively reduced KPR's 2014-2015 reported EtO emissions for the purpose of concealing the true nature and extent of the Augusta Facility's EtO emissions, misleading GA EPD and other government entities, and ensuring that the Augusta Facility did not get flagged as causing an elevated cancer risk in the EPA's 2018 National Air Toxics Assessment.

[Id. ¶ 78]. According to the Complaint, because these misrepresentations and concealments prevented Plaintiffs from discovering the cause of the injury "until recently," the "claims are timely brought before the Court." [Id. ¶ 23].

Second, Judge Hall properly applied the more stringent federal pleading standard in his decision to dismiss the complaint. Brownman, 2022 WL 4451339, at *2, 6. However, as explained, Georgia's notice pleading standard applicable in this case, is much less demanding—"it is immaterial whether a pleading states conclusions or facts as long as fair notice is given." Stillwell, 663 F.3d at 1334

9

(quoting Carley, 472 S.E.2d at 110). Under this standard, Plaintiffs' conclusory allegations that Defendants' misrepresentations prevented them from discovering the causal connection between their injuries and Georgia Defendants' conduct is sufficient to toll the statute of limitations. Thus, because there is a possibility that the statute of limitations does not bar Plaintiffs' claims against Georgia Defendants, Defendants' timeliness argument does not establish fraudulent joinder.

### B. Factual Basis of Plaintiffs' Claims

Defendants also argue that the Complaint is devoid of any factual basis to support even the possibility of a claim for relief. [Doc. 1 ¶¶ 28–30]. Thus, the Court will look to the Complaint and accompanying evidence to determine whether Plaintiffs have established a possible claim for negligence, nuisance, ultrahazardous activity, or racketeering. Remand is required unless Defendants can prove by clear and convincing evidence that no Plaintiff has asserted even the possibility of a single claim under Georgia law. See Florence, 484 F.3d at 1299.

At a minimum, Plaintiffs have alleged a possible negligence claim against Georgia Defendants. To assert a claim for negligence, a plaintiff must establish "(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." Martin v. Ledbetter, 802 S.E.2d 432, 434 (Ga. Ct. App. 2017) (citation omitted). Defendants' argument centers on the last of these elements: that Plaintiffs cannot connect Georgia Defendants' negligent conduct to

Plaintiffs' injuries and damages. [Doc. 77 at 16–18]. But a plain reading of the Complaint soundly contradicts that argument. Throughout the Complaint, Plaintiffs repeatedly allege that Defendants proximately caused their injuries. [See Doc. 1-1 ¶ 106 ("Plaintiff was exposed to harmful levels of EtO as a proximate result of the acts and omissions of each KPR Defendant . . ."); ¶ 107 ("As a proximate result of each Defendants' negligent acts and omissions, individually and collectively, Plaintiff developed and was otherwise diagnosed as suffering from cancer."); ¶ 113 ("Defendants' negligent, grossly negligent, willful, wanton, and reckless conduct, as described herein, was the proximate cause of Plaintiff's illness and injuries . . .")].

As explained, these conclusory allegations are alone sufficient to assert the causation element of negligence under Georgia's notice pleading standard. See Stillwell, 663 F.3d at 1334. But Plaintiffs' Complaint exceeds that standard by not only alleging the element of causation, but also identifying the specific actions that caused Plaintiffs' injuries. For example, the Complaint alleges that the Georgia Defendants "all personally witnessed, directed, cooperated, controlled, and/or participated in the improper disposal and/or release of fugitive emissions of EtO from the Augusta Facility." [Doc. 1-1 ¶ 94]. The Complaint also specifically alleges that at least one of the Georgia Defendants misrepresented the amount of EtO emitted from the plant. [See id. ¶ 89] ("Matthew East of KPR reported that 11.58 pounds of [EtO] had leaked . . . . GA EPD later determined that the final amount of

11

EtO released was actually 13.7 pounds."). The Complaint then goes on to list 17 ways Defendants breached their duty of care. [Id. ¶ 111]. And it explains in great detail the toxic properties of EtO—the chemical Defendants allegedly released—and its risk to human health. [See id. ¶¶ 52–67].

In attempts to counter Plaintiffs' allegations of causation, Defendants submit affidavits of Georgia Defendants denying that they had control of the use of EtO and denying that they were responsible for certifying emissions data sent to the Georgia EPA. [Doc. 77 at 19–20] (citing Docs. 77-15–77-20). But these affidavits do not amount to clear and convincing evidence sufficient to establish fraudulent joinder. In a similar case, this Court made clear that defendant affidavits generally denying allegations in the complaint are insufficient to foreclose negligence claims against joined employees. McLendon v. Becton, Dickinson and Co., No. 1:20-cv-04671-WMR, 2021 WL 6752200, at *4 (N.D. Ga. Feb. 11, 2021). As the Court explained, "Even if the Georgia Defendants' affidavits fully rebutted Plaintiffs' claims, the Eleventh Circuit has stated that 'doubt with respect to the allegations concerning the resident defendants being false as when the question depends on the credibility of witnesses or the weight of evidence will not render the joinder fraudulent.'" Id. at *4 n.3 (quoting Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc., 436 F. App'x 888, 891 (11th Cir. 2011)). While the affidavits here have evidentiary value, it is the role of a jury, not of this Court, to decide how much value. Because the

affidavits do not preclude the possibility of a negligence claim against Georgia Defendants, they are insufficient to establish fraudulent joinder.

Defendants also argue that because Plaintiffs' negligence claims "make no effort to identify the allegedly negligent conduct of [Georgia Defendants,]" they constitute a shotgun pleading. [Doc. 77 at 18]. Georgia courts have said little about shotgun pleadings. Only one case, Bush v. Bank of N.Y. Mellon, 720 S.E.2d 370 (Ga. Ct. App. 2021), which Defendants cite, discusses the issue at any length. Borrowing characteristics of shotgun pleadings from Eleventh Circuit caselaw, the Bush court determined that the plaintiffs' amended complaint bared the marks of a shotgun pleading because it was so difficult to understand that the trial court could not even determine whether it stated any claim for relief. Id. at 373–74. For example, the amended complaint incorporated by reference allegations from the original complaint, previously filed motions, and exhibits; contained 17 different counts, many of which contained multiple claims; vaguely alleged fraud without any factual details; and cited statutes and legal theories without explaining their relevance. Id. at 373.

Plaintiffs' Complaint does not contain these types of deficiencies. Rather, Plaintiffs' claims against Georgia Defendants are clearly defined and comport with Georgia's pleading requirements by alleging that each Georgia Defendant owed a duty of care, breach that duty of care, and caused Plaintiffs injury through that

13

breach. [Doc. 1-1 ¶¶ 109–113]. And that is all that is required to establish a claim for negligence under Georgia law.[5] See Martin, 802 S.E.2d at 434; Stillwell, 663 F.3d at 1334 (explaining that Georgia's notice pleading standard is satisfied if the pleading "gives fair notice and states the elements of the claim plainly and succinctly").

Because Plaintiffs have asserted a possible claim for negligence against at least one Georgia Defendant, the Court concludes that Georgia Defendants were not fraudulently joined to the state court lawsuit. The Court, therefore, need not decide whether Plaintiffs have established possible claims for public nuisance, private nuisance, ultrahazardous activity, or racketeering. See Florence, 484 F.3d at 1298–99 ("[O]n a motion for remand, the federal court's analysis must be limited to determining whether Plaintiffs have even *an* arguable claim." (cleaned up and emphasis added)). Defendants have failed to meet their burden of demonstrating by clear and convincing evidence that Georgia Defendants were joined to the state court action solely to defeat diversity. Thus, because complete diversity of the Parties does

---

[5] Even if the Complaint did constitute an impermissible shotgun pleading as Defendants suggest, that would not automatically prevent remand. As the Bush court explained, when a plaintiff files a shotgun pleading, the proper remedy is to require the plaintiff to amend with a more definitive statement rather than to dismiss the complaint entirely. 720 S.E.2d at 374; accord McLeod v. Costco Wholesale Corp., 894 S.E.2d 442, 447 n.4 (Ga. Ct. App. 2023) (noting that the Georgia Civil Practice Act "contains no such blanket prohibition" against shotgun pleadings and that trial courts should "require a plaintiff to more definitively state his claims" if they have difficulty understanding the pleading). Thus, even a shotgun complaint could state possible claims. To establish fraudulent joinder, however, that possibility must be completely foreclosed. See Florence, 484 F.3d at 1299.

not exist, the Court lacks subject matter jurisdiction to adjudicate the dispute and must remand.[6]

## IV. Conclusion

For the reasons above, the Court **GRANTS** the Joint Motion to Reopen Case [Doc. 73] and Plaintiffs' Motion to Remand [Doc. 75]. The Court also **DENIES AS MOOT** Defendants' Motion to Transfer [Doc. 74]. The Court **REMANDS** the following cases to the State Court of Gwinnett County, Georgia, and **DIRECTS** the Clerk to **TERMINATE** each of them: Case Nos. 1:23-CV- 01555-VMC; 1:23-CV-01557-TWT; 1:23-CV-01564-ELR; 1:23-CV-01566-JPB; 1:23-CV-01571-AT; 1:23-CV-01565-MLB; 1:23-CV-01572-SCJ; 1:23-CV-01574-MHC; and 1:23-CV-04927-ELR. Finally, because no matters remain in this case, the Court **DIRECTS** the Clerk to **TERMINATE** this action.

**SO ORDERED**, this 11th day of February, 2025.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia

---

[6] Because remand is required, the Court denies as moot Defendants' motion to transfer. [Doc. 74].